1

2

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MINA HA,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>BANK OF AMERICA, N.A., et al.<br><br>　　　　　　　Defendants. | Case No. 5:14-cv-00120-PSG<br><br>**ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>**(Re: Docket Nos. 37 and 39)** |

Before the court are Defendant Bank of America, N.A.'s ("BANA") motions to dismiss and

strike Plaintiff Mina Ha's second amended complaint.[1]  Ha opposes.  The parties appeared for a

hearing.  After considering the arguments, the court GRANTS BANA's motion, but only IN-PART

as explained below.

### I. BACKGROUND

**A.     Diversity Jurisdiction Lies Over the Case**

Ha is a California resident raising California state law claims in this court pursuant to

diversity jurisdiction.[2]  BANA "is a diversified financial marketing and/or services company

engaged primarily in residential mortgage banking and/or related" businesses domiciled in

---

[1] *See* Docket Nos. 37 and 39.  There is a stay on litigation involving Defendants Bank of New York Mellon and Resurgent Capital Services, LP while Ha's loan modification application is being reviewed.  *See* Docket No. 35.

[2] *See* Docket No. 36 at ¶¶ 2-4.

North Carolina.[3]   "BNY is a diversified financial marketing and/or service company engaged primarily in residential mortgage banking and/or related" businesses domiciled in New York.[4] Resurgent "is a diversified financial marketing and/or services company engaged primarily in residential mortgage banking and/or related" businesses domiciled in South Carolina.[5]

**B.      Factual Background**

Ha owns real property located at 20972 Greenleaf Dr., Cupertino, CA 95014.[6]  Ha "purchased the Property on August 26, 2005."[7]  In late November of 2006, Ha refinanced her loan with Countrywide Financial executing a promissory note and deed of trust in favor of Countrywide Financial on November 22, 2006.[8]  Countrywide was purchased by BANA in 2008 and BANA "became the beneficiary of Plaintiff's loan, as well as the servicer."[9]  Ha stayed current on her loan until mid-2008.[10]

"In or around mid-September 2008" Ha inquired about a possible loan modification.[11]  A female representative of BANA "told Plaintiff, because she was current on her mortgage payments, she was ineligible for a loan modification."[12]  Ha "inquired about other options and was told that she was otherwise qualified for a loan modification, however, in order to receive the modification,

---

[3] *Id.* at ¶¶ 2 and 4.

[4] *Id.*

[5] *Id.*

[6] *See id.* at ¶ 12.

[7] *Id.* at ¶ 13.

[8] *See id.*

[9] *Id.*

[10] *See id.* at ¶ 14 ("Between November 2006 and September 2008, Plaintiff fully performed under her contract by making a timely mortgage payment each month."); *But see* Docket No. 40-1, Ex. B at 2 (indicating Ha fell behind on her payments in June 2008).

[11] *Id.* at ¶ 15.

[12] *Id.*

2

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

she would have to miss three months of payments."[13]  Ha "was concerned about the effect of

missing payments and expressed such concern to the female representative" of BANA.[14]  In

response:

> [A BANA] female representative promised Plaintiff that, if Plaintiff missed payments in pursuit of a loan modification, [BANA] would not initiate foreclosure proceedings as long as Plaintiff was being reviewed for a loan modification.  In fact, the representative stated that it was [BANA's] policy to not initiate foreclosure proceedings against any borrowers as long as they were in the process of applying for a loan modification or were being reviewed for a loan modification.  Thus, in reliance on the representative's statements, Plaintiff, who was ready, willing, and able to make her mortgage payments, did not make her October 2008 [payment].[15]

"In or around October 2008, Plaintiff contacted [BANA] once more to inquire about the effect of

missed" payments and

> [Ha] spoke to another female representative of [BANA and was told] the same promise to Plaintiff, regarding [BANA's] policy regarding the initiation of foreclosure proceedings while a borrower was in the process of applying for, and being reviewed for, a loan modification.  Further, Plaintiff asked if she should resume making payments on the loan following the three months of missed payments.  The female representative stated that Plaintiff should not begin to make payments on the loan until she received a permanent modification, because any missed payments would be taken care of in the permanent modification.  Thus, the female representative told Plaintiff to continue missing payments, following the three initial months, and stated that Plaintiff did not risk the initiation of foreclosure proceedings for doing so.[16]

By January, Ha had "missed three mortgage payments" and "submitted a complete loan

modification application."[17]  Ha "always complied" with "repeated request[s]" to submit additional

documentation.[18]  On May 1, 2009, while Ha was "was in the process of submitting a loan

modification application, and while her application was pending review, Defendant [BANA]

caused to be recorded a Notice of Default against Plaintiff's Property, thereby initiating foreclosure

---

[13] *Id.*

[14] *Id.* at ¶ 16.

[15] *Id.*

[16] *Id.* at ¶ 17.

[17] *Id.* at ¶ 18.

[18] *Id.*

3

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

proceedings against Plaintiff's Property."[19]  Ha contacted BANA about the notice of default and spoke to another BANA representative who "told Plaintiff to disregard the Notice of Default and to continue applying for a loan modification."[20]  Ha "continued to seek a loan modification, rather than make arrangements to reinstate her loan."[21]

From June 2009 through April 2011, Ha "continued to submit all requested documents" to BANA in pursuit of a loan modification and "spoke to several representatives who reiterated the same promises made to Plaintiff in September and October 2008 - that a loan modification was forthcoming and that she need not worry about the risk of foreclosure while awaiting the final loan modification."[22]  In April 2011, Ha spoke to a BANA representative "to confirm that they had received the latest documents that she had submitted" as BANA "requested additional documents to support Plaintiff's January 2009 loan modification" application,[23] but the BANA representative "stated that Plaintiff's loan modification application had been misplaced and, thus, Plaintiff would need to send in a complete new application."[24]

Ha expressed her concern over the missing documents and "was told that she would still receive a permanent modification, however, she needed to submit a new application."[25]  The BANA representative "further stated that Plaintiff need not be concerned about foreclosure, if she

---

[19] *Id.* at ¶ 19.

[20] *Id.* at ¶ 20.

[21] *Id.*

[22] *Id.* at ¶ 21.

[23] *Id.*

[24] *Id.*

[25] *Id.*

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

**United States District Court**
For the Northern District of California

submitted a new application."[26]  In April 2011, Ha submitted "a complete new loan modification" application.[27]

In October 2011, Ha was informed her loan modification application was denied because "her husband's income was too great to qualify for a loan modification, however, the income relied upon by BANA in coming to this decision was inaccurate and her husband's income was actually less than BANA had determined."[28]  Ha contacted BANA to contest the income determination and the BANA representative "acknowledged the mistake in her husband's income, however, he indicated that he could not fix it on his system."[29]  Ha was told "that she would have to submit an entirely new application, which Plaintiff immediately did."[30]

Between October 2011 and February 2012, Ha continued contacting BANA to follow up on her application and BANA's representatives assured Ha "that her application was complete and was under review."[31]  When Ha "inquired about the growing arrears on her loan, she was told that she need not worry about the arrears as the permanent modification would take the arrears into consideration."[32]  Despite the fact that Ha's loan modification application was under review, BANA "caused a Notice of Trustee's Sale to be recorded against Plaintiff's Property on February 10, 2012 with a sale date of May 8, 2012."[33]  "When Plaintiff received the Notice of Trustee's

[26] *Id.*

[27] *Id.*

[28] *Id.* at ¶ 23.

[29] *Id.*

[30] *Id.*

[31] *Id.* at ¶ 24.

[32] *Id.*

[33] *Id.*

5

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sale, she phoned BANA and was told to disregard the notice.  The representative stated that, because her loan modification application was under review, no foreclosure sale would proceed."[34]

In August 2012, Ha's application for a loan modification was denied for a second time.[35]

In August 2012, BANA appointed Ha "a designated point of contact within the company" – Antonio Guevara.[36]  Ha worked with "Mr. Guevara on her loan modification application" until February 2013, but "Mr. Guevara constantly gave her conflicting information."[37]  "Between March 2013 and May 2013, Plaintiff called Mr. Guevara weekly to check on the status of her application. Mr. Guevara consistently reassured Plaintiff that her application was complete and was still under review."[38]

In May 2013, Ha "received a letter indicating that her Deed of Trust and Promissory Note had been transferred to Defendant BNY, and that Defendant Resurgent would be the servicer of

---

[34] *Id.* at ¶ 25.

[35] *See* Docket No. 1 at ¶ 25.

> In August 2012, [BANA] denied Plaintiff's application on the basis that Plaintiff's income was insufficient.  Plaintiff was puzzled about her applications being denied for her income being too low, and then later too high, so she called her CRM, Antonio Guevara, for clarification. Mr. Guevara had no information for Plaintiff.  However, Mr. Guevara recommended that Plaintiff submit another application.

*See also* Docket No. 13 at ¶ 25

> In August 2012, Defendant [BANA] denied Plaintiff's application on the basis that Plaintiff's income was insufficient.  Plaintiff was puzzled about her applications being denied for her income being too low, and then later too high, so she called her CRM, Antonio Guevara, for clarification. Mr. Guevara had no information for Plaintiff.  However, Mr. Guevara recommended that Plaintiff submit another application.

[36] *Id.* at ¶ 26.

[37] *Id.* ("For instance, on one day, Mr. Guevara would confirm receipt of documents that he had requested.  Then, the following day, he would state that he never received the documents and would require Plaintiff to resubmit them.  Finally, however, on February 28, 2013, Mr. Guevara confirmed that Plaintiff's application was complete and under review.").

[38] *Id.* at ¶ 27.  Ha also alleges that on "May 1, 2013, Plaintiff called Mr. Guevara as she had been doing for months, but this time Mr. Guevara told Plaintiff that her application was incomplete because it was lacking a tax form.  This was wrong, because Plaintiff's tax form had been submitted with her application. Nonetheless, Plaintiff resubmitted the requested tax form." *Id.*

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10

United States District Court
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's loan."[39]  Plaintiff called Resurgent "to ask about the status of her loan modification

application that Plaintiff had sent to Defendant [BANA] in August 2012, as she still had not

received a final determination."[40]  Plaintiff's "new point of contact with Resurgent, Chris Burger,

told Plaintiff that he had no record of a loan modification on file" for her account and that Ha

"would have to reapply for a loan modification with Resurgent."[41]

In "June 2013, Plaintiff submitted a timely and complete loan modification to Defendant

Resurgent."[42]  "On June 14, 2013, Plaintiff called to check on the status of her application, and

Mr. Burger confirmed that Plaintiff's application was complete and was under review.  However, a

week later, Mr. Burger retracted and told Plaintiff that her application had never been under review

because Resurgent was missing documents."[43]  Ha submitted the missing documents.[44]

"Between July 2013 and November 2013, Plaintiff contacted Mr. Burger frequently to

check on the status" of her application and "Mr. Burger would first tell Plaintiff that her application

was complete and was under review, only to later tell Plaintiff that Resurgent had never been

reviewing her for a loan modification because she was, purportedly, missing documents."[45]  Each

time Resurgent requested additional documents, Ha complied with the request.[46]

On December 24, 2013, Ha received a letter "stating that she would not be considered for a

loan modification because the Property had been scheduled for a foreclosure on

---

[39] *Id.* at ¶ 28.

[40] *Id.*

[41] *Id.*

[42] *Id.* at ¶ 29.

[43] *Id.* at ¶ 29.

[44] *See id.*

[45] *Id.* at ¶ 30.

[46] *See id.*

7

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

December 23, 2013."[47]  The foreclosure sale set for December 23, 2013 remains postponed in

perpetuity.[48]

**C.      Procedural Posture**

For clarity, the court charts the amended pleadings and asserted claims:

| Date | DN | Complaint | Claims Raised |
|------|----|-----------|---------------|
| 1.8.14 | 1 | Original Complaint | 1. Violation of California Civil Code §§ 2924 and 2923.5<br>2. Violation of California Civil Code §§ 2923.6 and 2923.7<br>3. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>4. Unfair Competition |
| 2.24.14 | 13 | First Amended Complaint | 1. California Civil Code §§ 2924 and 2923.5<br>2. California Civil Code §§ 2923.6 and 2923.7<br>3. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>4. Unfair Competition |
| 7.16.14 | 36 | Second Amended Complaint | 1. Violation of California Civil Code § 2924<br>2. Violation of California Civil Code § 2923.5<br>3. Violation of California Civil Code § 2924g<br>4. Violation of California Civil Code § 2923.7<br>5. Fraud<br>6. Negligent Misrepresentation<br>7. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>8. Unfair Competition |

## II. LEGAL STANDARDS

**A.      Fed. R. Civ. P. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief."[49]  When a plaintiff fails to proffer "enough facts to state a claim to relief that is

plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

may be granted.[50]  A claim is facially plausible "when the pleaded factual content allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."[51]  Under

---

[47] *Id.* at ¶ 31.

[48] *See id.*

[49] Fed. R. Civ. P. 8(a)(2).

[50] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

8

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[52]  Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[53]

**B.        Request for Judicial Notice**

The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[54]

### III. DISCUSSION

**A.        Request for Judicial Notice**

BANA requests the Court take judicial notice of loan-related, publicly recorded documents: (1) the 2006 deed of trust, (2) the 2009 notice of default, (3) the 2010 substitution of trustee and assignment of deed of trust, (4) the 2010 notice of trustee's sale, (5) the 2012 corrective corporation assignment of deed of trust and (6) the 2012 notice of trustee's sale.[55]  The authenticity of these documents is not in dispute and may be verified by the public record.  Although the court will not rely on facts contained within the documents that reasonably may be subject to dispute, the court takes judicial notice of these six documents.

**B.        Violation of Cal. Civ. Code § 2924**

Ha's first claim alleges that BANA's conduct violates Cal. Civ. Code § 2924, which requires that a mortgagor be in breach of the obligation securing the mortgage before the

---

[52] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[53] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[54] Fed. R. Evid. 201(b).

[55] *See* Docket No. 40.

9

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

mortgagee can invoke its power of sale.[56]  Ha cites to Cal. Civ. Code § 1511 and argues that her duty to make timely payments was excused because BANA did "some act naturally tending to induce the plaintiff not to perform, the plaintiff's failure to perform is excused.  When this occurs, according to California Civil Code § 1512, the plaintiff is entitled to all the benefits of the contract had it been performed by both parties."[57]

First, the alleged statements made by BANA were responsive to Ha's inquiries into a possible loan modification and other options.[58]  BANA is not alleged to have told Ha to stop making her mortgage payments.  Ha instead claims an unnamed BANA representative stated that "in order to receive the modification, she would have to miss three months of payments."[59]  BANA's representative's statement does not constitute an explicit instruction or demand to stop making payments – they were merely responsive to Ha's request for information about her eligibility for a loan modification review.[60]

Second, Ha was not excused from her obligations under the loan based on BANA's alleged instruction to "stop making payments in order to obtain a loan modification"[61] because acts of forbearance, including activities of a loan modification, do not waive the lender's right to enforce

---

[56] *See* Docket No. 36 at ¶¶ 36-39.

[57] *Id.* at ¶ 37.

[58] *See id.* at ¶ 15.

[59] *Id.*

[60] *Cf. Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 37 (1941) ("The act of inducing the breach must be an intentional one.  If the actor had no knowledge of the existence of the contract or his actions were not intended to induce a breach, he cannot be held liable though an actual breach results from his lawful and proper acts." (citations omitted).

[61] Docket No. 36 at ¶ 37.

10

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

the terms of the DOT.[62]  As such, any information provided by BANA regarding loan modification

eligibility did not extinguish Ha's ongoing obligation to continue making payments on the loan.

Ha had a preexisting duty to meet her contractual obligations under the terms of the loan.  Given

Ha's preexisting duty to make payments and her default on that debt, BANA was authorized to

initiate foreclosure proceedings under Section 2924.[63]

   Third, the NOD, recorded on May 1, 2009, evidences that Ha on her own was already in

default several months before she contacted BANA in or around September 2008.[64]  Ha thus

breached her loan obligations before any alleged statement by BANA.[65]

---

[62] *See* Docket No. 40-1, Ex. A, at ¶ 12.

> Extension of time for payment or modification of amortization of the sums secured by this
> Security Instrument granted by Lender to Borrower or any Successor in Interest of
> Borrower shall not operate to release the liability of Borrower or any Successors in Interest
> of Borrower.  Lender shall not be required to commence proceedings against any Successor
> in Interest of Borrower or to refuse to extend time for payment or otherwise modify the
> amortization of the sums secured by this Security Instrument by reason of any demand
> made by the original Borrower or Successors in Interest of the Borrower.  Any forbearance
> by Lender in exercising any right or remedy, including, without limitation, Lender's
> acceptance of payments from third persons, entities or Successors in Interest of Borrower in
> amounts less than the amount then due, shall not be a waiver of the exercise of any right or
> remedy.

[63] *Cf. Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 857 (D. Minn. 2012).

> Bohnhoff argues that the [trial payment plan] is a promise to provide a permanent loan
> modification.  As already explained, the TPP was not a promise.  Moreover, Bohnhoff
> pleaded no facts that support a finding of detrimental reliance; instead, she had a legal duty
> to make payments on the Note.  Further, Bohnhoff does not show that enforcing the alleged
> promises is necessary to prevent injustice.  Wells Fargo was entitled to receive payments
> under the Note, and once Bohnhoff ceased making payments, Wells Fargo was entitled to
> foreclose the mortgage and sell the home. *See Brisbin v. Aurora Loan Servs., LLC,*
> Case No. 10-cv-2130, 2011 WL 1641979, at *4 (D.Minn. May 2, 2011).  Therefore,
> dismissal of the promissory estoppel claim is warranted.

[64] *See* Docket No. 40-1, Ex. B at 2.

> That a breach of, and default in, the obligations for which such Deed of Trust is security has
> occurred in that payment has not been made of: FAILURE TO PAY THE INSTALLMENT
> OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 06/0112008 AND ALL
> SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER
> WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED
> BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR
> ATTORNEYS' FEES. IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL
> BECOME DUE ON 12/0112036 AS A RESULT OF THE MATURITY OF THE
> OBLIGATION ON THAT DATE.

11

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

Ha also claims BANA violated Section 2924a(1)(C) because the NOD allegedly contains an inaccurate arrearages amount.[66] The gist of Ha's argument is that performance under the DOT was excused pursuant to Section 1511 because she was allegedly told that "any missed payments would not be a default but would simply be included in a permanent loan modification."[67] At bottom, Ha urges the arrearages indicated on the NOD were waived. But the DOT is explicit:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.[68]

Because Ha was not excused from performing under the DOT, and the DOT explicitly provides for the accrual of arrears (including attorneys' fees) following Ha's default, the NOD properly reflects an arrearages amount.

Overall, the undersigned shares Judge Illston's take on such matters: Ha's "duty to make monthly payments was not extinguished by [Defendants'] alleged promises that modifications could only be sought upon default."[69] The "decision to default was [Ha's] alone."[70] Because Ha's allegations fail to state a claim for a violation of Section 2924, dismissal is warranted. Because Ha has amended her complaint thrice already, the court is persuaded further amendment to this claim would be futile such that leave to amend is not warranted.

---

[65] Ha's allegation that she remained current is not assumed to be true in light of the judicially noticed evidence. *See Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (noting that a "we may not assume the truth of allegations in a pleading which are contradicted" by the record).

[66] *See* Cal. Civ. Code § 2924 ("A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.").

[67] Docket No. 36 at ¶ 38.

[68] *See* Docket No. 40-1. Ex. A at ¶ 14.

[69] *Pacini v. Nationstar Mortgage, LLC*, Case No. 3:12-cv-04606-SI, 2013 WL 2924441, at *8 (N.D. Cal. June 13, 2013).

[70] *Id.*

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

**C.      Violation of Cal. Civ. Code § 2923.5**

Ha next alleges BANA ran afoul of the detailed requirements of Cal, Civ. Code § 2923.5

that provide guidelines that must be adhered to before a notice of default may be recorded.  Absent

compliance with Section 2923.5, the "available, existing remedy" is "to postpone the sale until

there has been compliance with section 2923.5."[71]  Because the latest foreclosure sale date set by

Resurgent was postponed[72] and no foreclosure sale materialized while BANA serviced the loan, Ha

cannot show prejudice from BANA's notice of default.  Dismissal of this claim without leave to

amend is warranted.

**D.      Violation of Cal. Civ. Code § 2923.7**

Ha also alleges BANA failed to comply with California Civil Code Section 2923.7.[73]

Section 2923.7 requires mortgage servicer to provide a single point of contact with the borrower.

Ha does not dispute that BANA tendered a single point of contact: Antonio Guevara.  Ha instead

---

[71] *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 223 (2010); *see also Roberts v. JP Morgan Chase Bank, N.A.*, Case No. 5:09-cv-01855-LHK, 2011 WL 864949, at *5
(N.D. Cal. Mar. 11, 2011) ("However, the remedy for a Section 2923.5 violation is limited to postponement of the foreclosure sale to allow compliance.").

[72] *See* Docket No. 36 at ¶ 38.

[73] The relevant code section provides:

(a)      Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b)      The single point of contact shall be responsible for doing all of the following:

    (1)      Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

    (2)      Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

    (3)      Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

    (4)      Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

    (5)      Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4

takes issue with Guevara's substantive compliance with the statute.  But Ha's own allegations

indicate that Guevara confirmed receipt of documents and also notified Ha of missing documents

needed for her loan modification review.[74]  Dismissal of this claim without leave to amend is

warranted.[75]

5

### E.      Fraud

6
7
8
9
10
11
12

BANA urges the court to strike or dismiss Ha's claims for fraud and negligent

misrepresentation that were raised for the first time in her second amended complaint, without

leave of the court.  Fed. R. Civ. P. 15 permits a party to amend its pleadings "as a matter of course"

early on in a case but deeper into a case, "a party may amend its pleading only with the opposing

party's written consent or the court's leave."[76]  Because the court agrees with BANA that leave to

amend is claim-specific,[77] and Ha never sought leave, dismissal appears warranted.

13
14

To short-circuit additional motion practice – at additional expense to the parties – the court

will nevertheless address the substance of Ha's fraud and negligent misrepresentation claims.

15
16
17
18
19

"Under California law, the indispensable elements of a fraud claim include a false

representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."[78]  The

nub of Ha's fraud claim is that she was misled about the substance of BANA's loan modification

policies.  That intentional misrepresentation caused her to run up debt that she ultimately could not

20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

---

[74] *See* Docket No. 36 at ¶ 47.

[75] The court also notes that BANA's alleged violation of Section 2923.7 has been remedied through the postponement of the foreclosure sale scheduled for December 23, 2014.
[76] Rule 15 also advises that courts "should freely give leave when justice so requires."

[77] *See Yau v. Duetsche Bank Nat. Trust Co. Americas*, Case No. 11-cv-00006-JVS, 2011 WL 8326579, at *2 (C.D. Cal. Aug. 31, 2011) ("In order to assert claims that were not asserted in the FAC, Plaintiffs would have had to obtain Defendants' consent or the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). Plaintiffs did not do so.  Accordingly, the first, third, fourth, fifth, seventh, and eighth claims are dismissed without prejudice.").

[78] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (layered quotations and citations omitted).

14

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

1

2

pay down.  In the process she accrued fees associated with falling into default.  Ha now seeks to

recoup those damages through her fraud claim.

3

4

Ha adequately alleges what false representation was made: BANA told Ha that it would not

initiate foreclosure proceedings while Ha's loan modification application was pending.[79]  Although

5

Rule 9(b) requires Ha to "state the time, place, and specific content of the false representations as

6

well as the identities of the parties" to the misrepresentation,[80] the Ninth Circuit has explained that

7

8

where a defendant will not "be hampered in their defense" and it is otherwise "unrealistic to

expect" a plaintiff to "remember the name" of BANA's representative dismissal at the pleading

9

10

stage may not always be required.[81]  Ha's best argument is that BANA either knows or possesses

unique knowledge of how to determine, which of its representatives were in contact with Ha.  That

11

12

specialized knowledge, paired with the detailed allegations set forth in Ha's complaint, overcomes

Rule 9(b).

13

14

The parties have not identified, nor has the undersigned's research unearthed, an extension

15

of *Odom* to the facts of this case.  Indeed, the Ninth Circuit explicitly limited *Odom* to its facts.[82]

16

17

_____

[79] *See* Docket No. 36 at ¶ 87.

18

19

20

21

22

23

In the case at hand, beginning in or around September 2008 and continuing through February 2012, Defendant [BANA] made several misrepresentations through various representatives whose names are not now known but as easily ascertainable through discovery as [BANA's] servicing notes will indicate the names of the employees that Plaintiff spoke to on each occasion.  Specifically, [BANA's] employees repeatedly told Plaintiff that [BANA] would not initiate foreclosure proceedings as long as Plaintiff was being reviewed for a loan modification. In fact, the representatives stated that it was [BANA's] policy to not initiate foreclosure proceedings against any borrowers as long as they were in the process of applying for a loan modification or were being reviewed for a loan modification.  Further, the representatives stated that Plaintiff should not be concerned with missing payments because any missed payments would be taken care of in the permanent modification.

24

25

26

[80] *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.") (citing *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985)).

27

[81] *Odom v. Microsoft Corp.*, 486 F.3d 541, 554-55 (9th Cir. 2007).

28

[82] *Id.* at 554 ("We hold for two reasons that, in the circumstances of a retail transaction whose full consequences are realized only months later, the employee of the store need not be named.").

15

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10

At least one other trial court also has declined to extend *Odom* beyond its facts[83] and, when that case reached the Ninth Circuit on appeal, the panel affirmed the trial court's finding that Rule 9(b) had not been satisfied.[84]   Nor, too, do the allegations in the complaint justify an extension of *Odom*. Ha's complaint spells out whether the misrepresentations were "made in person" or "over the phone."   The factual details alleged also have matured with iterative amendments to the complaint. The incomplete, shifting allegations obscure "the context of the alleged fraud and ultimately deprive[s] [BANA] of the specific notice required under Rule 9(b)."[85]   However, because the court cannot say here that amendment would be futile, dismissal of this claim with leave to amend is warranted.

11

**F.        Negligent Misrepresentation**

12
13
14

As "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role

15
16

[83] *See Goodwin v. Executive Tr. Servs., LLC.*, 3:09-CV-306-ECR-PAL, 2010 WL 5056192, at *3 (D. Nev. Dec. 2, 2010) *aff'd sub nom. Goodwin v. Countrywide Home Loans, Inc.*, 11-17667, 2014 WL 2611072 (9th Cir. June 12, 2014).

17
18
19
20
21
22

Plaintiffs cite *Odom v. Microsoft Corp.,* 486 F.3d 541 (9th Cir. 2007), for the proposition that they need not identify the individual who made the allegedly fraudulent representations.  *Odom,* however, involved a consumer purchase at a Best Buy store. *Id.* at 554. Fraud was pleaded with particularity with the exception that the plaintiff did not name the individual cashier who conducted the allegedly fraudulent transaction.  *Id.*  Under those narrow circumstances the Ninth Circuit created a limited exception to the general rule that the alleged maker of a fraudulent representation must be identified: "[I]n the circumstances of a retail transaction whose full consequences are realized only months later, the employee of the store need not be named."  *Id.*  This case does not involve a routine retail transaction like the kind at issue in *Odom* and the logic of *Odom* does not apply with the same force.

23

[84] *See Goodwin v. Countrywide Home Loans, Inc.*, Case No. 11-17667, 2014 WL 2611072, at *1 (9th Cir. June 12, 2014).

24
25
26
27

On remand from the MDL Court, Plaintiffs' claims for fraud in the inducement fail because the SAC does not plead fraud with particularity.  *See* Fed. R. Civ. P. 9(b).  The SAC does not identify the agent or agents who made the alleged misrepresentations, what type of employee the alleged agents were, or whether the alleged misrepresentations were made by one or multiple agents.  They do not identify the date, location, manner, or frequency of any alleged misrepresentation.  They therefore fall short of the particularity required by Rule 9(b).  *See Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004).

28

[85] *See Goodwin v. Executive Tr. Servs., LLC.*, 2010 WL 5056192, at *3 (D. Nev. Dec. 2, 2010).

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

as a mere lender of money."[86]  Because "a loan modification is the renegotiation of loan terms,

which falls squarely within the scope of a lending institution's conventional role as a lender of

money," BANA owes Ha no duty of care.[87]  Because the court is persuaded that amendment of this

claim would be futile, this claim is dismissed without leave to amend.

## G.        Breach of the Implied Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing, implied by law in every contract, exists

merely to prevent one contracting party from unfairly frustrating the other party's right to receive

the benefits of the agreement actually made."[88]  The covenant "cannot impose substantive duties or

limits on the contracting parties beyond those incorporated in the specific terms of their

agreement."[89]  The elements of a claim for breach of the covenant of good faith and fair dealing

are:

(1) the plaintiff and the defendant entered into a contract;

(2) the plaintiff did all or substantially all of the things that the contract required him to do
or that he was excused from having to do;

(3) all conditions required for the defendant's performance had occurred;

(4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the
contract; and

(5) the defendant's conduct harmed the plaintiff.[90]

Ha's theory under this claim is that BANA "breached the covenant of good faith and fair

dealing and interfered with Plaintiff's ability to perform under the contract by inducing Plaintiff to

---

[86] *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991)

[87] *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013) ("A lender's
obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives
are created solely by the loan documents, statutes, regulations, and relevant directives and
announcements from the United States Department of the Treasury, Fannie Mae, and other
governmental or quasi-governmental agencies.").

[88] *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).

[89] *Id.* at 349-50.

[90] *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (citing Judicial Counsel of
California Civil Jury Instructions § 325 (2011)).

17

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

1

2

stop making payments on her mortgage loan, through the promise that Plaintiff would not face

foreclosure proceedings for doing so."[91]

3

4

5

6

7

8

9

10

This argument has been rejected by this court.  BANA merely responded to Ha's inquiries

and explained how she could enter the loan modification process by going late on her payments.

Ha's election to skip payments was Ha's alone to make.[92]  The "core of her pleadings on this cause

of action remains the contention that Defendant told her she could obtain a loan modification by

going late on her payments.  This does not rise above the level of encouragement.  The choice to

pay or not to pay remained with Plaintiff.  Plaintiff therefore fails to state a claim for breach of the

implied covenant."[93]

11

12

13

Because Ha's allegations clearly show that Ha never actively interfered with Ha's

payments, dismissal of this claim is warranted.  The court will permit amendment of this claim

only to show the active interference currently absent from the complaint.

14

15

16

17

18

19

**H.    Unfair Competition**

The UCL prohibits unfair competition, including, inter alia, "any unlawful, unfair or

fraudulent business act."[94]  "Because [section 17200] is written in the disjunctive, it establishes

three varieties of unfair competition – acts or practices which are unlawful, or unfair, or

fraudulent."[95]

20

21

22

23

24

25

26

27

28

[91] *See* Docket No. 36 at ¶ 108.

[92] *See Ren v. Wells Fargo Bank, N.A.*, Case No. 3:13-cv-0272 SC, 2013 WL 5340388, at *2
(N.D. Cal. Sept. 24, 2013) ("The Court dismissed this claim in Plaintiff's FAC because Defendant
never actively interfered with Plaintiff's payments.  It told Plaintiff that she could enter the loan
modification process by going late on her payments, but that was a choice only Plaintiff could
make."); *Franczak v. Suntrust Mortgage, Inc.*, Case No. 5:12-cv-01453-EJD, 2013 WL 843912,
at *3 (N.D. Cal. Mar. 6, 2013) ("Being left with an impression that a particular action is
encouraged is something very different than actually being required to do something.") (quotations
omitted).

[93] *Ren*, 2013 WL 5340388, at *2.

[94] Cal. Bus. & Prof. Code § 17200.

[95] *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ha alleges a common UCL theory: the predicate claims support a UCL claim under the unfairness prong.  Because Ha's predicate claims fail, they cannot support a UCL claim.  Accordingly Ha's UCL claims also fail.  Because the court is not persuaded that amendment of this claim would be futile, leave to amend is warranted.

Any amended complaint addressing the pleading issues identified within this order shall be filed within fourteen days.

**IT IS SO ORDERED.**

Dated: July 22, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:14-cv-00120-PSG
ORDER GRANTING-IN-PART BANA'S MOTION TO DISMISS AND MOTION TO STRIKE